IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 3, 2014

## MILTON L. KIRK, JR. v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Dyer County**
**Nos. 09-CR-291, 10-CR-35, 11-CR-186     Don R. Ash, Senior Judge**

_____

**No. W2013-00544-CCA-R3-PC  - Filed July 29, 2014**

_____

Milton L. Kirk, Jr., ("the Petitioner") was convicted by a jury of sale of .5 grams or more of cocaine. The Petitioner then pleaded guilty to tampering with evidence and possession with intent to sell or deliver cocaine. The trial court sentenced the Petitioner to an effective sentence of sixteen years' incarceration. The Petitioner subsequently filed for post-conviction relief, which the post-conviction court denied following an evidentiary hearing. The Petitioner now appeals, arguing that he received ineffective assistance of counsel at trial and that his guilty plea was constitutionally invalid. Upon our thorough review of the record and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Circuit Court Affirmed**

JEFFREY S. BIVINS, SP. J., delivered the opinion of the Court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Jason R. Creasy, Dyersburg, Tennessee, for the appellant, Milton L. Kirk, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; and Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

The Petitioner was indicted by a Dyer County Grand Jury in separate indictments for the following charges: one count each of sale of .5 grams or more of cocaine and sale of cocaine in a drug-free zone in an indictment dated August 10, 2009 ("Case 1"); tampering with evidence, resisting arrest, and evading arrest in an indictment dated February 8, 2010 ("Case 2"); and possession with intent to sell or deliver cocaine in an indictment dated June

13, 2011 ("Case 3").[1]  The Petitioner proceeded to trial on January 12, 2011, on the charge of sale of .5 grams or more of cocaine.[2]

*Trial*

At trial, Sergeant Todd Thayer, with the Criminal Investigations Division of the Dyersburg Police Department ("DPD"), testified that his job included supervising the controlled purchases of narcotics.  On March 10, 2009, Sergeant Thayer coordinated a controlled purchase of cocaine by a confidential informant named Brenda McElroy.  On this day, the target of the controlled purchase was the Petitioner.  McElroy believed that the Petitioner drove a red sports utility vehicle.  McElroy called a certain phone number and received no answer, but within a minute she received a call from the same phone number.  McElroy and the Petitioner arranged for the controlled purchase to occur at the Q-Mart in Dyersburg.  After the controlled purchase, Sergeant Thayer met with McElroy and retrieved from her "$50 worth of crack cocaine."  Sergeant Thayer stated that, based on his involvement in approximately 800 controlled purchases over the course of his career, $50 typically bought approximately one-half gram of cocaine.  He identified at trial the sealed envelope containing the purported crack cocaine.

A video of the transaction was played for the jury without objection.  Sergeant Thayer identified the vehicle of the person selling the crack cocaine as "a four door red Chevrolet Blazer."  McElroy informed Sergeant Thayer that he would find the vehicle at the Sunrise Motel because the Petitioner was staying there.  Accordingly, Sergeant Thayer went to the Sunrise Motel and found the vehicle, which had tags registered to the Petitioner.

Brenda McElroy, a confidential informant for the DPD, testified that on March 10, 2009, she completed a controlled purchase of crack cocaine from the Petitioner.  She had known the Petitioner for approximately a year at the time of the controlled purchase.  McElroy told the police that the Petitioner would be driving "a red truck, a Blazer."  While with the police, McElroy called the Petitioner's cell phone but received no answer.  However, shortly after she hung up, the Petitioner called back.  She told the Petitioner that she "needed a fifty," and they agreed to meet at a convenience store close to the hospital.  According to McElroy, she did not specify that she wanted to buy crack cocaine, but the Petitioner

_____

[1] According to the record, the facts giving rise to Case 3 occurred when the Petitioner was arrested pursuant to his indictment in Case 1.

[2] Although not otherwise noted in the record, the Petitioner testified at the post-conviction hearing that, upon motion by his counsel at trial, the trial court severed the two charges for sale of .5 grams or more of cocaine and sale of cocaine in a drug-free zone.  The Petitioner first proceeded to trial on the charge of sale of cocaine in a drug-free zone, which resulted in a mistrial.  The State then proceeded to trial against the Petitioner on the charge of sale of .5 grams or more of cocaine.

understood because she "had bought previously from him before." The audio recording of the phone conversation was played for the jury without objection. McElroy identified her voice as well as that of the Petitioner.

McElroy arrived at the convenience store "a minute or two" before the Petitioner. When the Petitioner arrived in "that red truck," McElroy approached the passenger side of his vehicle. She opened the passenger-side door, retrieved the drugs that were sitting in the passenger's seat, and placed the money in the passenger's seat. McElroy denied that anyone other than the Petitioner was in the vehicle at that time. She described the drugs as "white, little rocks," which she knew to be crack cocaine from her past use of the drug. According to McElroy, she had not used crack cocaine personally in two years. However, on cross-examination, she agreed that she still was using crack cocaine at the time of this controlled purchase.

Special Agent John Scott, Jr., with the Tennessee Bureau of Investigation ("TBI") Drug Identification Unit, testified as an expert in the field of drug identification. On April 7, 2009, the TBI received an envelope related to the present case. Special Agent Scott identified the envelope previously identified by both Sergeant Thayer and McElroy as the envelope containing the substance acquired from the Petitioner in the controlled purchase. According to Special Agent Thayer's testing and analysis, he concluded that the substance in the envelope was 0.51 grams of a substance containing "cocaine base."

Investigator Shane Anderson testified that he currently worked as one of two evidence custodians for the DPD. On March 10, 2009, Investigator Anderson assisted in a controlled purchase of cocaine by searching the confidential informant's vehicle before and after the purchase. Investigator Anderson also retrieved the sealed evidence envelope pertaining to this case and transported it to the TBI.

At the conclusion of the trial, the Petitioner was convicted of sale of .5 grams or more of cocaine and sentenced to twelve years' incarceration.

*Guilty Plea Hearing*

The Petitioner subsequently pleaded guilty to tampering with evidence and possession with intent to sell or deliver cocaine. At the guilty plea hearing, the State recited the factual basis for the plea as follows:

> [O]n December the 9th of 2009, Patrolman Shawn Crouch of the Dyersburg Police Department made a traffic stop on Christie Street for a seatbelt violation and while he was dealing with the driver he also – well, [the Petitioner] was a passenger in that vehicle that he knew to be currently out on bond for sale of

cocaine. As he was dealing with the driver and he also had his canine unit walking it around the truck he began – one of the other officers pointed out [the Petitioner] appeared to have a bulge in his mouth. And he asked [the Petitioner] what it was and he said that he had some kind of abscess and he asked to see it. When he looked inside his mouth he saw what appeared to be a small baggie of cocaine. When he asked [the Petitioner] to get it or to retrieve it, [the Petitioner] took off running and during the chase [the Petitioner] somehow disposed of what was in his mouth and when he was finally taken into custody the officer asked him where – what did you do with the cocaine and he told him it wasn't cocaine, just marijuana. . . .

Your Honor, . . . the new indictment [Case 3], the facts would be that on August 12, 2009, while he was out on patrol Officer Brent Hill of the Dyersburg Police Department was on patrol, he noticed [the Petitioner], and knowing that he had a capias out on him in [Case 1], he knew that we had just indicted him on that case, . . . he took him into custody. And during a search incident to the arrest he found a small amount of cocaine, what turned out to be .3 grams of cocaine in his shoe.

Pursuant to the Petitioner's plea agreement, the trial court sentenced the Petitioner to four years for his tampering with evidence conviction and six years for his possession with intent to sell or deliver cocaine conviction. The Petitioner's tampering with evidence conviction was to run consecutively to his sale of cocaine conviction but concurrently to his possession with intent to sell or deliver cocaine conviction, for a total effective sentence of sixteen years' incarceration. His charges for sale of cocaine in a drug-free zone, resisting arrest, and evading arrest were nolle prossed.

### Post-Conviction Hearing

The Petitioner subsequently filed a petition for post-conviction relief, claiming that he received ineffective assistance of counsel on multiple grounds and that his plea was constitutionally invalid. Although the Petitioner asserted multiple instances of ineffective assistance of counsel at trial and in conjunction with his plea submission, on appeal he argues only that trial counsel failed to provide the Petitioner with discovery with respect to all of his cases and failed to communicate with the Petitioner in Cases 2 and 3. The Petitioner also contends on appeal that his plea is constitutionally invalid. Accordingly, we only will include the testimony adduced at the post-conviction hearing pursuant to these issues raised on appeal.

At the post-conviction hearing, the Petitioner testified that his counsel at trial ("trial counsel") represented him in both the trial that resulted in a mistrial and the trial that resulted

in his conviction for sale of .5 grams or more of cocaine. Pertaining to the trial that resulted in his conviction, the Petitioner testified, "I didn't want to [go to trial]. I was actually forced. I didn't have a choice. I would've copped out."

The Petitioner stated that, with respect to both tried charges, he never received a copy of any of the discovery materials, despite his requests to trial counsel. Later, the Petitioner testified that the only evidence he received prior to trial was the video of the controlled purchase.

The Petitioner contended that he requested that trial counsel move to suppress evidence in Case 2 but that trial counsel failed to file the motion. According to the Petitioner, he did not receive a copy of any of the discovery for Case 2, so he filed a complaint against trial counsel with the Board of Professional Responsibility. Additionally, the Petitioner, on his own behalf, filed a motion to be relieved of trial counsel, which the trial court denied. According to the Petitioner, he did not realize that he had been charged with tampering with the evidence until he appeared at the preliminary hearing for Case 2.

Although the Petitioner also had moved for a continuance in Case 2, the Petitioner decided to plead guilty instead. According to the Petitioner, when he arrived at court the day before trial on Case 2, he learned that he had received an additional indictment for Case 3. The Petitioner stated that, upon learning of this new indictment, he "couldn't take no [sic] more" and entered into his guilty pleas approximately thirty minutes later. The Petitioner asserted that, had he not received the new indictment in Case 3, he would not have entered a guilty plea in Case 2 and instead would have insisted upon going to trial the following day.

After a series of questions, the Petitioner clarified that the facts giving rise to Cases 1 and 3 all occurred in 2009 and that the Petitioner had a preliminary hearing for both cases in 2009. However, the State only brought an indictment for Case 1 at that time. The Petitioner did not learn that he had received an indictment in Case 3 until the day before his trial in Case 2. When trial counsel informed the Petitioner of the indictment, trial counsel already had received a potential plea bargain of six years for the cocaine charge in Case 3.

The post-conviction court questioned the Petitioner about his testimony at his guilty plea hearing that he was happy with trial counsel. The Petitioner responded,

> I wasn't happy. But, I couldn't do nothing about it, Your Honor. He was – I had already filed ineffectiveness before that. . . . I was forced. I basically didn't have no choice. I didn't want to keep going to trial. I didn't want to keep getting all this time stacked on me about something that – all these charges . . . piled on me.

-5-

The Petitioner agreed that, if the post-conviction court should decide to set aside his guilty pleas and let him proceed to trial, the Petitioner could receive a sentence as high as approximately thirty-five years' incarceration.

On cross-examination, the Petitioner acknowledged that he had two convictions prior to any of the charges in this case. The Petitioner agreed that, when he originally was arrested for the indicted charges pertaining to Case 1, police found him in possession of cocaine, which was the factual basis of Case 3. The two charges in Case 1 were tried separately, with the charge for sale of cocaine in a school zone resulting in a hung jury and the sale of cocaine charge resulting in a conviction.

Regarding Case 1, the Petitioner claimed never to have seen any discovery prior to trial. However, the Petitioner acknowledged that he knew the identity of the confidential informant and had seen the video prior to both trials. Prior to trial on the sale of cocaine charge, trial counsel presented the Petitioner with a plea offer of four and a half years. According to the Petitioner, he wanted to accept that plea offer.

The Petitioner stated that he wanted to call additional witnesses at trial to establish that the confidential informant, McElroy, was using drugs at the time of the controlled purchase. He agreed, however, that trial counsel, on cross-examination, was able to elicit such testimony from McElroy.

When asked what evidence he wanted suppressed in Case 2, the Petitioner stated that he believed the police officer conducted an illegal search of him, the passenger in the vehicle. However, the Petitioner acknowledged that the police found nothing as a result of that search and that, accordingly, there would be no physical evidence to suppress. The Petitioner also asserted that he "was never booked or fingerprinted for tampering with evidence."

The Petitioner agreed that his trial for Case 2 was set for June 22, 2011. In the days preceding the trial date, the Petitioner contacted the Board of Professional Responsibility because he felt that trial counsel was not effective in preparing him for trial. Accordingly, an individual with the Board of Professional Responsibility instructed trial counsel to meet with the Petitioner. The Petitioner denied, however, that trial counsel discussed Case 2 during that meeting. The Petitioner confirmed that, as part of his plea agreement, he agreed to waive any appeal of his jury conviction in Case 1.

Trial counsel testified that he had approximately fourteen years of experience handling criminal cases. He stated that, as "a matter of procedure," his office always filed a motion for discovery. Although trial counsel, in general, did not send a copy of the discovery to his clients, he typically would review the discovery with his clients in their first meeting.

Trial counsel recalled that, during the time the Petitioner was released on bond, the Petitioner did not have a stable place of residence. Therefore, trial counsel relied on the Petitioner "to make and keep appointments" at trial counsel's office. Trial counsel stated that he and the Petitioner had "good communication" in preparation for the first trial, which resulted in a hung jury. With respect to the trial in which the Petitioner was convicted of sale of .5 or more grams of cocaine, however, trial counsel stated that he and the Petitioner did not communicate as much. According to trial counsel, the Petitioner admitted that he was the person depicted in the video, so trial counsel "had an ethical issue" defending someone who admitted to being guilty.

Trial counsel stated that, on the morning of the second trial in Case 1, the Petitioner called trial counsel's office and said that he wanted to plead guilty and "would take a misdemeanor." Trial counsel attempted to explain to the Petitioner that the State was not offering a misdemeanor conviction for the cocaine charge. Trial counsel testified that, once the Petitioner understood the plea offer, the Petitioner "was adamant and not pleading to anything, and the hung jury in the first case just fueled his determination that he wasn't going to plead to anything other than a misdemeanor."

Trial counsel stated that, with respect to the facts pertaining to Case 3, the other individual in the vehicle was Amber Henson, the mother of the Petitioner's child. Trial counsel testified,

> Ms. Henson, as you said, had secreted drugs in her vagina. When she got to jail, she said [the Petitioner] forced her to put them in there. . . . [The Petitioner's] main – during my representation of him after he was convicted in [Case 1], his main concern, his overriding concern, regardless of anything, was that Ms. Henson not be convicted. He didn't want the mother of his child going to prison.
>
> . . . .
>
> And so, that was – that is the elephant in the room that we're not discussing, that fueled that – this ultimate plea. And in fact, as a part of the bargain, [the State] agreed to dismiss the cocaine case against Ms. Henson in exchange for [the Petitioner's] plea. So ultimately, neither one of them ended up being convicted of that case, in exchange for the plea in this case.

Trial counsel agreed that he and the Petitioner had several disagreements prior to the Petitioner's entering his guilty pleas in Cases 2 and 3. Trial counsel stated, "[The Petitioner] couldn't understand how he could be convicted of tampering with evidence if they never recovered any drugs." Additionally, the Petitioner wanted trial counsel to file a motion to

suppress in Case 2, but trial counsel did not believe there was any basis to do so in fact or law.

Trial counsel believed that, had Case 2 gone to trial, "it was going to be basically [the Petitioner's] word versus the police officer's words." He estimated that, from the time the Petitioner was taken into custody in January 2011 until June 2011, trial counsel met with the Petitioner at least twice in preparation for trial. According to trial counsel, he customarily reviewed the lab report as to the drug analysis but could not recall specifically whether he had done so in this case.

The Petitioner was re-called to testify. He stated that trial counsel, in fact, did not show him the lab report prior to trial. The Petitioner admitted that, in the plea negotiations with the State, he was concerned about the mother of his child receiving jail time. The Petitioner furnished the post-conviction court with a copy of the Petitioner's civil suit in federal court against the State for malicious prosecution. In this suit, the Petitioner claimed that the State improperly re-indicted him for a charge (Case 3) that was dismissed in the General Sessions court.

At the conclusion of the hearing, the post-conviction court determined that the Petitioner was not entitled to relief. The post-conviction court stated in its ruling:

> The Court finds [the Petitioner] was not a credible witness. His testimony at the post-conviction hearing directly contradicts his testimony at the time he entered his pleas . . . . The court finds [that trial counsel's] performance in both the jury trial and the subsequent pleas was not deficient and, even if it was, the [Petitioner] was not prejudiced. Based upon his testimony at the post-conviction hearing and the plea date, [the Petitioner] was fully aware of the numerous cases which were being dismissed as well as the 6 year sentence running concurrent with the other two cases. His pleas that day were not only beneficial to him due to the numerous charges which were nollied, but also met his goal of having charges dismissed against the mother of his child. [The Petitioner] failed to meet his burden of proof in regard to his request for post-conviction relief.

Following the post-conviction court's denial of relief, the Petitioner timely appealed.

## Analysis

Relief pursuant to a post-conviction proceeding is available only when the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of

the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006); see also Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

*Ineffective Assistance of Counsel*

The Petitioner argues that he was denied the effective assistance of counsel in conjunction with his guilty plea. The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[3] Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106,

---

[3] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688). Our supreme court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)). When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Pylant, 263 S.W.3d at 869 (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)). "A reasonable probability of being found guilty of a lesser charge . . . satisfies the second prong of Strickland." Id. In the context of a guilty plea, our analysis of this prong

> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

-10-

Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Calvert v. State, 342 S.W.3d 477, 486 (Tenn. 2011).

## Trial

The Petitioner asserts that trial counsel was ineffective at trial in failing to provide the Petitioner with discovery prior to trial. In its order denying relief, the post-conviction court found that the Petitioner "admitted he had in fact seen the video in question. While [trial counsel] had no specific recollection of reviewing the TBI lab report with the [Petitioner], he did testify this was his practice."

The record does not preponderate against the post-conviction court's findings. At the post-conviction hearing, the Petitioner admitted that he had the opportunity prior to trial to watch the video submitted as evidence. Trial counsel testified that his general practice was to review all discovery with his client at their initial meeting. Trial counsel also stated that, on the morning of the second trial in Case 1, the Petitioner called trial counsel's office and said that he wanted to plead guilty and "would take a misdemeanor." Trial counsel attempted to explain to the Petitioner that the State was not offering a misdemeanor conviction for the cocaine charge. Trial counsel testified that, once the Petitioner understood the plea offer, the Petitioner "was adamant and not pleading to anything, and the hung jury in the first case just fueled his determination that he wasn't going to plead to anything other than a misdemeanor."

To the extent the Petitioner testified to the contrary, the post-conviction court expressly found the Petitioner's testimony at the post-conviction hearing not credible, and we must defer to its findings as such. See Momon, 18 S.W.3d at 156. Thus, the Petitioner has failed to establish that trial counsel was deficient in this regard. Accordingly, we need not address the prejudice prong. See Goad, 938 S.W.2d at 370. Therefore, the Petitioner is entitled to no relief as to this issue.

## Guilty Plea

The Petitioner also argues that trial counsel was ineffective in his representation of the Petitioner in conjunction with the Petitioner's guilty plea submission. Specifically, the Petitioner contends that trial counsel failed to provide the Petitioner with discovery in Cases 2 and 3 and "did not communicate with the [Petitioner] so that [the Petitioner] could make informed decisions regarding his representation."

Looking first to the prejudice prong, we hold that the Petitioner has failed to establish that, but for any of the alleged deficiencies of trial counsel, the Petitioner would not have pleaded guilty and instead "would have insisted upon going to trial." Hill, 474 U.S. at 59.

At the post-conviction hearing, trial counsel testified that, with respect to the facts pertaining to Case 3, the other individual in the vehicle was Amber Henson, the mother of the Petitioner's child. Trial counsel testified,

> Ms. Henson, as you said, had secreted drugs in her vagina. When she got to jail, she said [the Petitioner] forced her to put them in there. . . . [The Petitioner's] main – during my representation of him after he was convicted in [Case 1], his main concern, his overriding concern, regardless of anything, was that Ms. Henson not be convicted. He didn't want the mother of his child going to prison.
>
> . . . .
>
> And so, that was – that is the elephant in the room that we're not discussing, that fueled that – this ultimate plea. And in fact, as a part of the bargain, [the State] agreed to dismiss the cocaine case against Ms. Henson in exchange for [the Petitioner's] plea. So ultimately, neither one of them ended up being convicted of that case, in exchange for the plea in this case.

Additionally, the Petitioner admitted that, in the plea negotiations with the State in Cases 2 and 3, he was concerned about the mother of his child receiving jail time. Moreover, the Petitioner testified that, when he arrived at court the day before trial on Case 2, he learned that he had received an additional indictment for Case 3. The Petitioner stated that, upon learning of this new indictment, he "couldn't take no [sic] more" and entered into his guilty pleas approximately thirty minutes later. The Petitioner asserted that, had he not received the new indictment in Case 3, he would not have entered a guilty plea in Case 2 and instead would have insisted upon going to trial the following day. The Petitioner has failed to establish that, but for any of the alleged deficiencies of trial counsel, he would have proceeded to trial on his indicted charges. To the contrary, the Petitioner's motivations for his plea appear to have been based on knowledge of a new indicted charge and fear of the mother of his child receiving jail time. Therefore, the Petitioner has failed to establish prejudice in this regard. Accordingly, we need not address the deficiency prong. See Goad, 938 S.W.2d at 370.

*Validity of the Plea*

The Petitioner also asserts that his plea was constitutionally invalid. To be valid, a plea must be entered knowingly, voluntarily, and intelligently. See Boykin v. Alabama, 395 U.S. 238, 242-44 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977) superseded on other grounds by Tenn. R. of Crim. P. 37(b) and Tenn. R. of App. P. 3(b). A plea meets constitutional muster when the defendant understands both what the plea connotes and its

consequences, <u>Blankenship v. State</u>, 858 S.W.2d 897, 904 (Tenn. 1993) (citing <u>Boykin</u>, 395 U.S. at 244), and makes a voluntary and intelligent choice from the alternative courses of action available to plead guilty, <u>Jaco v. State</u>, 120 S.W.3d 828, 831 (Tenn. 2003) (citing <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970)). In <u>Mackey</u>, 553 S.W.2d at 341, our supreme court set forth the procedure that a trial court should follow when accepting a plea in order to ensure that a defendant's plea is knowing, voluntary, and intelligent. <u>See also</u> Tenn. R. Crim. P. 11(b). A trial court must "substantially" comply with this procedure. <u>State v. Newsome</u>, 778 S.W.2d 34, 38 (Tenn. 1989).

We have reviewed the transcript of the guilty plea hearing and conclude that the Petitioner's plea was constitutionally sound. At the hearing, the Petitioner acknowledged that he understood: the nature of the charges for which he was pleading guilty and the potential sentencing ranges; his right to representation by counsel at trial; his right to a jury trial, in which he could cross-examine the State's witnesses and he could but would not be forced to testify; his right to an appeal; and that these felony convictions could be used against the Petitioner in future proceedings to enhance his sentence in a future felony case. The Petitioner also denied that anyone threatened him or that anyone promised him anything other than what was included in the plea agreement. When asked why he was pleading guilty, the Petitioner responded that he wished to avoid a life sentence. The Petitioner's testimony at the post-conviction hearing established that the Petitioner's primary concern remained the length of his sentence, not that he failed to understand his guilty plea. The Petitioner has failed to establish that he did not knowingly, intelligently, and voluntarily enter into his plea agreement. Accordingly, the Petitioner is not entitled to post-conviction relief on this basis.

## CONCLUSION

For the foregoing reasons, we conclude that the Petitioner is not entitled to post-conviction relief. Therefore, we affirm the judgment of the post-conviction court.

_____
JEFFREY S. BIVINS, SP. JUDGE